Matter of Guttman v Covert Town Bd. (2023 NY Slip Op 06621)

Matter of Guttman v Covert Town Bd.

2023 NY Slip Op 06621

Decided on December 22, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 22, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, LINDLEY, CURRAN, AND MONTOUR, JJ.

812 CA 20-01094

[*1]IN THE MATTER OF CHARLES GUTTMAN AND SHIRLEY LADD, PETITIONERS-APPELLANTS-RESPONDENTS,
v
COVERT TOWN BOARD, RESPONDENT-RESPONDENT, PAUL MIKESKA AND HEIDI MIKESKA, RESPONDENTS-RESPONDENTS-APPELLANTS. 

THE CROSSMORE LAW OFFICE, ITHACA (ANDREW P. MELENDEZ OF COUNSEL), FOR PETITIONERS-APPELLANTS-RESPONDENTS. 
SHARON M. SULIMOWICZ, ITHACA, FOR RESPONDENTS-RESPONDENTS-APPELLANTS. 
 

 Appeal and cross-appeal from a judgment (denominated order and judgment) of the Supreme Court, Seneca County (Daniel J. Doyle, J.), entered May 15, 2020, in a proceeding pursuant to CPLR article 78. The appeal was held by this Court by order entered March 24, 2023, decision was reserved and the matter was remitted to respondent Covert Town Board for further proceedings (214 AD3d 1464 [4th Dept 2023]). The proceedings were held and completed. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by granting the motion in its entirety, dismissing the petition, and vacating the third decretal paragraph, and as modified the judgment is affirmed without costs.
Memorandum: This CPLR article 78 proceeding arising from a land use and zoning dispute returns to us after having been held and remitted for respondent Covert Town Board (Board) to properly set forth its findings of fact (Matter of Guttman v Covert Town Bd., 214 AD3d 1464 [4th Dept 2023]; Matter of Guttman v Covert Town Bd., 197 AD3d 1009 [4th Dept 2021]). Petitioners appeal and Paul Mikeska and Heidi Mikeska (respondents) cross-appeal from a judgment that, among other things, effectively granted that part of respondents' motion seeking to dismiss the petition insofar as it sought to annul the determination of the Board that respondents' addition of a second-story deck to the main cottage on their property did not violate the setback requirements of the Town of Covert Land Management Ordinance (LMO) and granted the petition insofar as it sought to annul the determination of the Board that respondents' improvements to a bunkhouse on their property did not violate the prohibition in the LMO against having a second dwelling structure on a parcel.
As a preliminary matter, we note that Supreme Court rendered the judgment on appeal following respondents' pre-answer motion to dismiss, which was formally joined by the Board. To the extent that petitioners contend that the court's review was limited to determining whether, upon accepting the allegations as true and according petitioners every favorable inference, the petition contained cognizable legal theories, we reject that contention under the circumstances of this case.
A CPLR article 78 proceeding is a special proceeding (see CPLR 7804 [a]) and, as such, "may be summarily determined 'upon the pleadings, papers, and admissions to the extent that no triable issues of fact are raised' " (Matter of Battaglia v Schuler, 60 AD2d 759, 759 [4th Dept [*2]1977], quoting CPLR 409 [b]; see Matter of Hudson v Town of Orchard Park Zoning Bd. of Appeals, 218 AD3d 1380, 1382 [4th Dept 2023]). "Consequently, even if a respondent in a CPLR article 78 proceeding d[oes] not file an answer, where . . . it is clear that no dispute as to the facts exists and no prejudice will result, [a] court can, upon a . . . motion to dismiss, decide the petition on the merits" (Hudson, 218 AD3d at 1382 [internal quotation marks omitted]; see Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102 [1984]).
Here, "given the numerous evidentiary submissions by the parties related to the [Board's] determination," we conclude that " 'the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result' from a summary determination in the CPLR article 78 proceeding" (Hudson, 218 AD3d at 1382, quoting Nassau BOCES Cent. Council of Teachers, 63 NY2d at 102; see Matter of 22-50 Jackson Ave. Assoc., L.P. v County of Suffolk, 216 AD3d 939, 942 [2d Dept 2023]; Fiore v Town of Whitestown, 125 AD3d 1527, 1528 [4th Dept 2015], lv denied 25 NY3d 910 [2015]; cf. Matter of Bihary v Zoning Bd. of Appeals of City of Buffalo, 206 AD3d 1575, 1576 [4th Dept 2022]; Matter of Mintz v City of Rochester, 200 AD3d 1650, 1653 [4th Dept 2021]; Matter of Town of Geneva v City of Geneva, 63 AD3d 1544, 1544 [4th Dept 2009]).
As a further preliminary matter, we note that, "[w]hile as a general rule courts will not defer to administrative agencies in matters of 'pure statutory interpretation' . . . , deference is appropriate 'where the question is one of specific application of a broad statutory term' " (Matter of O'Brien v Spitzer, 7 NY3d 239, 242 [2006]; see Matter of Peyton v New York City Bd. of Stds. & Appeals, 36 NY3d 271, 281 [2020]). Here, we conclude that the Board, acting in the place of a zoning board, was charged with considering "how to view the [additions to the deck and the bunkhouse] under the zoning code" and, "[i]nasmuch as the interpretation that followed was rendered upon the facts of [those improvements] and was not an issue . . . of pure legal interpretation, it is afforded deference and will only be disturbed if irrational or unreasonable" (Matter of Catskill Heritage Alliance, Inc. v Crossroads Ventures, LLC, 161 AD3d 1413, 1416 [3d Dept 2018] [internal quotation marks omitted]; see Matter of Blanchfield v Town of Hoosick, 149 AD3d 1380, 1383 [3d Dept 2017]; Matter of Lumberjack Pass Amusements, LLC v Town of Queensbury Zoning Bd. of Appeals, 145 AD3d 1144, 1145 [3d Dept 2016]; see generally Peyton, 36 NY3d at 279-283; O'Brien, 7 NY3d at 242).
Petitioners contend on their appeal that the interpretation adopted by the Board—i.e., that the setback requirement was measured by the footprint of the building and that the second-story deck did not alter the setback—is irrational and not supported by substantial evidence. We reject that contention.
"Courts may set aside a zoning board determination only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion, or that it merely succumbed to generalized community pressure . . . A determination of a zoning board should be sustained on judicial review if it has a rational basis and is supported by substantial evidence" (Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; see Matter of Ifrah v Utschig, 98 NY2d 304, 308 [2002]). " 'It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them' " (Pecoraro, 2 NY3d at 613). "Thus, [a] reviewing court may not substitute its judgment for that of a local zoning board . . . , even if there is substantial evidence supporting a contrary determination" (Matter of Expressview Dev., Inc. v Town of Gates Zoning Bd. of Appeals, 147 AD3d 1427, 1428-1429 [4th Dept 2017] [internal quotation marks omitted]). Indeed, "[w]hen reviewing the determinations of a [z]oning [b]oard, courts consider 'substantial evidence' only to determine whether the record contains sufficient evidence to support the rationality of the . . . determination" (Matter of Sasso v Osgood, 86 NY2d 374, 384 n 2 [1995]; see Expressview Dev. Inc., 147 AD3d at 1429).
Here, the LMO provides, in pertinent part, that "[a]ll buildings shall be set back a minimum of 20 feet from each side and rear lot line" (LMO § 3 [A] [5]). The Board, after discussion and deliberation, adopted the interpretation of the town code enforcement officer that the new construction of the second-story deck did not alter the footprint of the original structure within the setback area. The Board reasoned that, prior to the new construction, the cottage [*3]included a covered porch that extended into the setback area of the north side lot line. The Board found that respondents then converted the roof of the covered porch into a second-story deck, which did not alter the setback of the building from the north lot line. In light of the deference afforded to the Board in the specific application of the ordinance to the property at issue, it cannot be said that the Board's determination was irrational. We conclude that the Board reasonably determined that the existing covered porch on the first level of the cottage was already nonconforming inasmuch as it extended into the setback area, and that the addition of the second-story deck did not alter the setback of the building as measured by the footprint thereof (see Matter of Martens v Zoning Bd. of Appeals of Vil. of Marcellus, 195 AD2d 974, 974-975 [4th Dept 1993]; see also Matter of Marro v Libert, 40 AD3d 1100, 1102 [2d Dept 2007]; Matter of Sposato v Zoning Bd. of Appeals of Vil. of Pelham, 287 AD2d 639, 640 [2d Dept 2001]).
Respondents contend on their cross-appeal that the court erred in rejecting the Board's finding that the bunkhouse did not constitute a dwelling and that the court therefore erred in granting the petition insofar as it sought to annul the determination of the Board that respondents' improvements to the bunkhouse did not violate the prohibition in the LMO against having a second dwelling structure on a parcel. We agree with respondents, and we therefore modify the judgment accordingly.
The LMO imposes "a limit of one dwelling structure per parcel" (LMO § 3 [A] [9]). It defines the term "dwelling" as a "[b]uilding, or part thereof, used as living quarters for one family" (LMO § 3 [B] [1] [a]) and the term "family" as "[o]ne . . . or more persons living, sleeping, cooking or eating on the same premises as a single housekeeping unit" (LMO § 3 [B] [1] [e]). Consequently, as relevant here, the bunkhouse would qualify as a "dwelling" if it constituted a building that was used as living quarters for one or more people who were living, sleeping, cooking, or eating on the same premises as a single housekeeping unit (see LMO § 3 [B] [1] [a], [e]). Certain types of buildings or structures are categorically included or excluded from the definition of "dwelling" (LMO § 3 [B] [1] [a]). In particular, the term "dwelling" does not include "a motel, hotel, boarding house, tourist home, single-wide mobile home, or similar structure" but does include "modular homes and double-wide mobile homes" (LMO § 3 [B] [1] [a]). The term "dwelling" also includes "a seasonal dwelling, which is not used, or intended for permanent residence and which is not occupied for more than 6 months in each year" (LMO § 3 [B] [1] [a]).
The question before the Board was thus whether respondents' improvements to the bunkhouse rendered that building a dwelling as defined by the LMO, thereby placing respondents in violation of the one-dwelling limitation. The Board determined that the bunkhouse did not constitute an improper second dwelling on the parcel because the lack of kitchen facilities would preclude a family from living independently in the bunkhouse as a separate housekeeping unit. The Board also found that the bunkhouse was similar to the types of structures listed in the LMO that were not included in the definition of dwelling. Upon affording the Board the requisite deference, we conclude that it cannot be said that the determination was irrational.
First, we agree with respondents that, although the LMO references cooking, the amenities in the structure do not determine whether it constitutes a dwelling; rather, inquiry must be made into how the structure was used. Indeed, the relevant plain language of the ordinance defines a "dwelling" as a building "used as living quarters" (LMO § 3 [B] [1] [a] [emphasis added]) for one or more people performing certain tasks "on the same premises as a single housekeeping unit" (LMO § 3 [B] [1] [e] [emphasis added]). Thus, contrary to the interpretation advocated by petitioners, which would improperly disregard the LMO's language regarding usage, we conclude that the use of the building as living quarters for a single housekeeping unit is central to whether the building meets the definition of "dwelling" (see Matter of Fox v Town of Geneva Zoning Bd. of Appeals, 176 AD3d 1576, 1578 [4th Dept 2019]). Considering the Board's determination in view of a proper interpretation of the LMO, we further conclude that the Board rationally determined that the bunkhouse, which lacked kitchen facilities, could not be used as living quarters for a family operating independently—i.e., as a single housekeeping unit—from those occupying the cottage (see Matter of Libolt v Town of Irondequoit Zoning Bd. of Appeals, 66 AD3d 1393, 1394 [4th Dept 2009]).
Second, we agree with respondents that the Board rationally found that the bunkhouse was similar to the types of structures expressly excluded from the LMO's definition of [*4]"dwelling." Buildings that do not constitute a dwelling for purposes of the LMO include a motel, hotel, boarding house, tourist house, or "similar structure" (LMO § 3 [B] [1] [a]). The record here supports the determination that, similar to the transient accommodations provided by boarding or tourist houses, the bunkhouse was used as sleeping quarters for overnight guests, rather than as a permanent or seasonal residence.
In light of the foregoing, we conclude that there is no basis on which to annul the Board's determinations.
Entered: December 22, 2023
Ann Dillon Flynn
Clerk of the Court